UNITED STATES of America,
Plaintiff–Appellee,

v.

Raymond CLUTTER (89–5390), Anna
M. Sizemore (89–5391),
Defendants–Appellants.

Nos. 89–5390, 89–5391.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 3, 1989.

Decided Sept. 18, 1990.

James E. Arehart, Asst. U.S. Atty. (argued), Louis DeFalaise, U.S. Atty., Lexington, Ky., James Zerhusen, Asst. U.S. Atty., Covington, Ky., for plaintiff-appellee.

Harry P. Hellings, Jr. (argued), Gina L. Nutter, Hellings & Nutter, Covington, Ky., R. Scott Croswell, III, Elizabeth E. Agar (argued), Cincinnati, Ohio, for Raymond Clutter.

Harry P. Hellings, Jr. (argued), Gina L. Nutter, Hellings & Nutter, Covington, Ky., for Anna Marie Sizemore.

Before BOGGS and NORRIS, Circuit Judges, and EDWARDS, Senior Circuit Judge.

ALAN E. NORRIS, Circuit Judge.

Defendants Raymond Clutter and Anna M. Sizemore appeal the district court's denial of their motion to suppress evidence of a large quantity of marijuana which they assert was seized pursuant to an invalid search warrant. The warrant is faulty, they contend, because its issuance was based upon information gained through an illegal search of their home, and the information given the issuing magistrate was misleading because it failed to apprise him of the method by which the information was obtained.

After conducting an evidentiary hearing, a magistrate concluded that the affidavit was not misleading, but recommended that the evidence nevertheless be suppressed because he concluded the warrant was based upon information obtained through an invalid consent search. The district court, however, denied the motion, relying upon the "spirit" of the good faith exception of *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Defendants then entered a plea of guilty to the indictment charging them with possession of a controlled substance with intent to distribute, the plea being conditioned upon the outcome of this appeal.

## BACKGROUND

Defendants Clutter and Sizemore resided together in Highland Heights, Kentucky, along with Sizemore's children from a previous marriage, Chris (age fourteen), Jim (age twelve), and Amy (age ten). Defendants routinely left the children alone from the time they left for work in the evening around 7:00 or 8:00 p.m., until they returned between 4:00 and 6:00 a.m. the next morning. In October 1987, Chris and Jim reported to their father, Frank Sizemore, that there was a "tremendous" amount of marijuana in defendants' home. Chris delivered to his father marijuana in a plastic bag which he had taken from defendants' bedroom. Frank Sizemore contacted Hal Spaw of the Northern Kentucky Narcotics Unit, and turned over to him the bag of marijuana. Sizemore advised Officer Spaw that the boys had told him that bags of marijuana were sitting around in defendants' bedroom and some of it was in dresser drawers.

Spaw suggested to Frank Sizemore that he might sign an affidavit for a search warrant, based upon the information given him by his sons. Sizemore declined, and would not consider the boys becoming openly involved, for fear of his safety and that of the boys. Sizemore said that defendants had on several occasions threatened to kill him.

In view of Frank Sizemore's having taken this position, Spaw told him that someone, perhaps an informant, would need to get inside defendants' residence in order to confirm the information given by the boys, if Spaw was to develop for a judge the information necessary to obtain a search warrant. Sizemore suggested that the boys would let Spaw into the house, and he

telephoned them to arrange for a visit by Spaw. When Officer Spaw went to defendants' home, knocked on the door, showed the boys his badge, and identified himself as the policeman they were expecting, they admitted him through the kitchen door. He immediately smelled marijuana. The boys led Spaw into defendants' bedroom and pointed out a dresser drawer as the location of marijuana. Spaw opened the drawer and saw sandwich-sized plastic bags containing marijuana. The boys then indicated there was more behind the dresser and, without moving any furniture, Spaw was able to see "two big garbage bags full of marijuana." He left without removing anything from the house.

Spaw prepared an affidavit to support an application for a search warrant for the signature of another police officer. In an effort to protect the boys, Spaw attributed his observations inside defendants' house to a confidential informant. The fact that the confidential informant was Spaw and that entry into the home was gained through the Sizemore children was not mentioned in the affidavit. A search warrant was issued, and officers found 28.25 pounds of marijuana in defendants' home.

## DISCUSSION

As the district court acknowledged, the applicability of *United States v. Leon* to the facts of this case is not clear. However, we need not reach defendants' contention that the district court erred in that regard, since the court can be affirmed on other grounds. *Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co.*, 772 F.2d 214, 216 (6th Cir.1985).

Defendants argue for the position taken by the magistrate, that the marijuana seized pursuant to the search warrant could not be introduced, since the warrant was predicated upon the fruits of a warrantless search. *See Murray v. United States*, 487 U.S. 533, 536, 108 S.Ct. 2529, 2532–33, 101 L.Ed.2d 472 (1988). On the other hand, the government contends that Spaw's initial entry was lawful since it was pursuant to consent given by the Sizemore boys.

A search does not violate the Fourth Amendment where police obtain consent to search from one who possesses common authority over the premises with the absent non-consenting target of the search. *United States v. Matlock*, 415 U.S. 164, 169, 94 S.Ct. 988, 992, 39 L.Ed.2d 242 (1974).

[A] consent search is fundamentally different in nature from the waiver of a trial right.... [W]hen the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected.

*Id.* at 171, 94 S.Ct. at 993.

Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, ... but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*Id.* at 171 n. 7, 94 S.Ct. at 993 n. 7.

As a general consideration, there is every reason to suppose that mature family members possess the authority to admit police to look about the family residence, since in common experience family members have the run of the house. So, in that sense, absent special circumstances, all rooms in the residence can be said to be areas of usage common to all members of the family. It is, of course, conceivable that family members will exclude from this common authority access to areas where they wish to maintain an expectation of privacy, even from other members of the family. Ac-

cordingly, courts are understandably reluctant to approve third-party consent searches of an enclosed space in which the family member targeted for the search has clearly manifested an expectation of exclusivity. *See, e.g., United States v. Block,* 590 F.2d 535 (4th Cir.1978) (third-party consent search of secured footlocker ruled invalid). It should be noted, however, that the Supreme Court has resisted a strained application of such an exclusive control concept. *See Frazier v. Cupp,* 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969).

■ Under the circumstances of this case, where children twelve and fourteen years of age routinely were left in exclusive control of the house, and defendants' possession of large quantities of marijuana was so open and patently non-exclusive that its odor pervaded the house, the government satisfied its burden of demonstrating the initial warrantless search of the bedroom was by consent, since the boys enjoyed that degree of access and control over the house that afforded them the right to permit inspection of any room in the house, and defendants assumed that risk.[1] Whether they also had the authority to consent to Spaw's inspection of the bureau drawer is a closer question, but one we need not address, since the large amount of marijuana validly seized in the garbage bags was sufficient to support issuance of the search warrant (and the convictions).

■ Defendants further argue that the boys could not consent to the search, since Spaw knew that defendants would not have permitted the boys to allow him to see the marijuana. That argument confuses the idea of common authority to consent to a search, with actual authority given an agent by his principal, and could be used to invalidate nearly any consent to search given by a third party. The legitimate expectation of privacy required to defeat common authority to consent to a search is vastly different from a mere subjective expectation of not being discovered to have violated the law. *Rakas v. Illinois,* 439 U.S. 128, 143 n. 12, 99 S.Ct. 421, 430 n. 12, 58 L.Ed.2d 387 (1978). Knowledge that defendants, like any other violators of the law, would not have wanted to be turned in to law enforcement authorities, is insufficient to defeat the reality that the boys possessed common authority over the premises.

Moreover, there is an alternative theory upon which the district court should be affirmed.

■ As pointed out by the government, defendants never challenged the right of the government to rely upon the bag of marijuana which the older boy previously had removed from their bedroom. That is understandable, since the exclusionary rule of the Fourth Amendment does not apply to a search and seizure by a private person not acting in collusion with law enforcement officials in order to circumvent the requirements of a search warrant. *United States v. Jacobsen,* 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984); *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Burdeau v. McDowell,* 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921). A search, as contemplated by the Fourth Amendment, occurs when an expectation of privacy that society is prepared to consider reasonable is infringed by government action; but, the Fourth Amendment is wholly inapplicable to a search, even an unreasonable one, effected by a private individual not acting as an agent of the government. *Jacobsen,* 466 U.S. at 113, 104 S.Ct. at 1656. Ordinarily then, where a private person delivers the fruits of his private search to police, that evidence is not excludable at trial on the basis that it was procured without a search warrant. *Coolidge,* 403 U.S. at 487, 91 S.Ct. at 2048–49. That was, of course, the situation with the bag of marijuana brought to police in this case.

1. Even if one were to argue that these facts would not warrant a finding that the government established that the boys had joint access or control for most purposes, the facts were more than adequate to support a reasonable belief by Spaw that the boys had authority to consent. *See Illinois v. Rodriguez,* — U.S. —, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990).

Police seldom obtain the fruits of private searches under such "silver platter" circumstances. In *Coolidge*, police went to the defendant's house to question his wife about a murder in which he was a suspect. When she was asked if he had a gun, she gave his guns to the police; when asked what he wore on the night of the murder, she gave them his clothes. The Supreme Court rejected defendant's contention that the result of police conduct was that his wife acted as the instrument or agent of the state when she produced the items he sought to exclude from evidence. Because she produced the items of her own accord, as an alternative to describing them, there was no unconstitutional police conduct to which Fourth Amendment considerations could attach. *Id.* at 489, 91 S.Ct. at 2049–50.

In *Jacobsen*, employees of a freight company examined a package which had been damaged by a fork lift. The wrapped cardboard carton was opened and seen to contain a tube made of duct tape—that tape was in turn cut open and the employees saw clear plastic bags containing white powder. They replaced the bags inside the tube, returned it to the box, and notified the Drug Enforcement Administration. When a DEA agent arrived, he was shown the box, which had its lid open. He saw that the tube inside had been slit open and proceeded to open the bags, remove a trace of the powder, and field test it for cocaine.

The Supreme Court noted that the fact that agents of the private carrier had independently opened the package and made an examination that might have been impermissible for a government employee did not render otherwise reasonable official conduct unreasonable. Even though the private conduct may have been unreasonable, it did not violate the Fourth Amendment because of its private character. 466 U.S. at 114–15, 104 S.Ct. at 1656–58. The question raised by the DEA agent's conduct, said the Court, was whether it amounted to an additional invasion of the defendant's privacy expectation beyond the scope of the private search. *Id.* at 116, 104 S.Ct. at 1658. Obviously, had the government agent's conduct significantly exceeded that of the freight company's employees, then he would have conducted a new and different search which would have been subject to Fourth Amendment protections. The Supreme Court concluded that there had been no impermissible expansion of the private search since, under the circumstances, the government had not infringed upon any constitutionally protected private interest that had not already been frustrated by the private search. *Id.* at 118, 104 S.Ct. at 1659.

When the circumstances of the case before us are considered in the context of a private search, it becomes apparent that the marijuana found in defendants' bedroom was not subject to the exclusionary rule of the Fourth Amendment. It was upon the boys' initiative that the chain of events was set in motion. From the earlier private search by the boys, Spaw had already learned that marijuana was kept in defendants' bedroom in garbage bags and in dresser drawers. When he arrived at the house, the boys, like Mrs. Coolidge, voluntarily displayed to him the items he inquired about—he was taken to the bedroom where the garbage bags were pointed out in plain view and he was directed to the dresser drawer which contained marijuana.

And in a situation similar to that in *Jacobsen*, Spaw opened the drawer that had previously been opened in the boys' private search and saw what the private searchers told him they had seen. He learned nothing as the result of his own conduct that he had not already heard about as the result of the private search; rather than discovering anything new when he looked in the bedroom the boys had looked in and opened the drawer the boys had opened, he only confirmed the fruits of their private search. Accordingly, Spaw did not expand upon or exceed the scope of the private search and could not, therefore, have infringed upon any constitutionally protected privacy interest of the defendants which had not already been frustrated by the private search.

By failing to object timely to the magistrate's recommendation that the dis-

trict court reject defendants' contention that the affidavit accompanying the application for the search warrant contained deliberate and material omissions of fact, defendants failed to preserve that contention. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Furthermore, because the information upon which the search warrant was predicated was legally obtained, the omission from the affidavit of a specific description of the method by which it was obtained, cannot be said to be a material omission. In addition, while the judge who issued the search warrant might have been misled into believing that Spaw and the confidential informant were two different persons, that misconception would not have been crucial to establishing probable cause. Defendants have not pointed to any facts recited in the affidavit relating to probable cause that are false. Accordingly, when one views the motivation of the police officers in drafting the affidavit in the form presented, it cannot be said that they acted to deceive the judge as to the existence of probable cause.

The judgments of the district court are affirmed.