23 F.3d 408
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Donald Ray FOLEY, Defendant-Appellant.
 No. 93-1838.
 United States Court of Appeals, Sixth Circuit.
 April 21, 1994.
 
 Before: JONES and BOGGS, Circuit Judges; and BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant-Appellant Ronald Ray Foley appeals his conviction and sentence on six narcotics counts. Foley asserts that the trial court made two errors which impacted upon his conviction and another two errors that improperly influenced his sentencing. Because his claims are without merit, we AFFIRM both his conviction and sentence.
 
 I.
 
 2
 Foley conspired with government witness Troy Trostle to manufacture methamphetamine. Trostle, who lived in Michigan, shipped ephedrine to Foley in Seattle, Washington. Ephedrine, a necessary component in the manufacture of methamphetamine, is legally available under limited circumstances in Michigan. Sale of the chemical is illegal in Michigan, however, if purchased in connection with the manufacture of methamphetamine, and is always illegal in Washington.
 
 
 3
 Law enforcement officials became aware of Foley and Trostle's undertaking when a United Parcel Service worker opened a package that Foley had sent to Trostle. The worker asserted that the package was improperly addressed and that it was opened so that either a correct address or the identity of the sender could be ascertained. The package contained methamphetamine.
 
 
 4
 On June 10, 1992, dressed as a parcel service employee, Detective Gary Miles delivered the package to Troy Trostle. After Trostle accepted the package, police officers secured a warrant and conducted a search of Trostle's home. Trostle was arrested at this time.
 
 
 5
 On June 12, 1992, Trostle's mother received notice that a package, addressed to Troy Trostle, was being held at the Post Office. However, instead of retrieving that package, Mrs. Trostle called the police.[1] She asserts that she notified the police because she was afraid that this package might contain narcotics. Miles recommended that Mrs. Trostle go and pick up the package, which she did. A police escort was provided after Mrs. Trostle expressed her fear of going to claim the package alone.
 
 
 6
 Mrs. Trostle was escorted by Officer DeYoung, who met her just outside of the Post Office. Mrs. Trostle collected the package and opened it in DeYoung's presence. The parcel contained $6,000 in money orders enclosed inside of two envelopes. Trostle subsequently turned the money orders and the packaging over to DeYoung.
 
 
 7
 At trial, Foley claimed that the money orders and envelopes should not be admitted as evidence. The money orders were the result of an illegal search, argued Foley, as Mrs. Trostle was acting under the direction of the police at the time the package was received and opened. At first the district court agreed with Foley's position. However, after additional briefing, the district court determined that suppression would be inappropriate.
 
 
 8
 At trial Foley also objected to certain testimony elicited from government witness Troy Trostle, on the ground that it concerned activity that predated the conspiracy. Based upon the admission of this testimony, Foley moved for a mistrial. The court denied this motion. However, the trial judge did offer to issue a curative order to the jury. This offer was declined by defense counsel for undisclosed reasons.
 
 
 9
 Following Foley's conviction on six of the eleven counts in the indictment, the trial judge ordered a pre-sentence report. The author of this report determined that Foley's base offense level was 38. This conclusion was the result of the investigator's determination that 10 pounds of ephedrine, the amount involved in the conspiracy, could produce 4.8 kilograms of methamphetamine. The defendant objected to this calculation, arguing that the amount of methamphetamine attributed to him in the pre-sentence report was speculative, as the exact amount of potential methamphetamine that could be produced could never be known. In addition, Foley asserted that the trial court should not have increased his base offense level by two points for his leadership role. The trial court rejected Foley arguments, and sentenced him to thirty-two years in prison.
 
 II.
 A. SUPPRESSION OF EVIDENCE
 
 10
 Foley's first assignment of error relates to the trial court's admission of government exhibits 4-11. These eight exhibits comprised the contents of the package that Mrs. Trostle opened in the presence of Officer DeYoung at the post office, and included six $1000 money orders and two envelopes. Foley asserts that Mrs. Trostle was acting under the direction of the police when she retrieved and opened the package, and thus the exhibits should not have been admitted because they were the fruits of an illegal search.
 
 
 11
 The Fourth Amendment does not protect against searches by private actors. United States v. Jacobsen, 466 U.S. 109, 113 (1984); United States v. Clutter, 914 F.2d 775, 778 (6th Cir.1990), cert. denied, 111 S.Ct. 1413 (1991). Accordingly, the fruits of a search conducted by a private individual will not be suppressed unless the private person was acting as an agent of the state.
 
 
 12
 In United States v. Lambert, 771 F.2d 83 (6th Cir.), cert. denied, 474 U.S. 1034 (1985), we established a test to determine when evidence procured by a private person must be suppressed. The two-pronged inquiry requires that for evidence uncovered by a private person to be suppressed:
 
 
 13
 First, the police must have instigated, encouraged or participated in the search. Second, the individual must have engaged in the search with the intent of assisting the police in their investigative efforts.
 
 
 14
 Lambert, 771 F.2d at 89 (citations omitted). When these two prerequisites are not satisfied, evidence should be considered the fruits of a "private search and, therefore, not within the purview of the Fourth Amendment." Id. In addition, if the intent of the private party conducting the search is independent of the official desire to collect evidence in a criminal proceeding, then the private party is not acting as a state agent. United States v. Howard, 752 F.2d 220, 227 (6th Cir.), cert. denied, 472 U.S. 1029 (1985), vacated on other grounds, 770 F.2d 57, 58-59 (6th Cir.1985) (en banc), cert. denied, 475 U.S. 1022 (1986).
 
 
 15
 In the instant case it is clear that the first prong of the Lambert test is satisfied. Mrs. Trostle testified that she contacted the police after she was notified by the post office that a package addressed to her son was being held for pickup. When she spoke with Detective Miles and asked him for advice, he recommended that she go to the post office and pick up the package. Clearly these actions show that the police "instigated, encouraged or participated" in the search.
 
 
 16
 However, Mrs. Trostle's search does not satisfy the second prong of the Lambert test. Trostle testified that she spoke with her son before calling the police but after receiving word from the post office. During this conversation, Trostle told her son that she was going to call the police and was going to give them whatever was found in the package at the post office. J.A. at 109, 124-25. Following her conversation with her son, Mrs. Trostle proceeded to contact the police based upon her fear that the package might contain drugs, despite her son's assurance that it was only money. Id. at 113. Mrs. Trostle's testimony further indicates that she had already decided to turn over the contents of the package to the police at the time she contacted them. Id. at 112, 124-25.
 
 
 17
 Thus, at the time she retrieved the package from the post office, Mrs. Trostle was not acting as an agent of the police. Although the police instructed Trostle to go and retrieve the package, it was her idea to turn it over to them. This idea stemmed not from her desire to help the police build a case against defendant Foley, but from her fear of having drugs in her home. Her independent motivation for conducting the search makes it a private one, not subject to control by the Fourth Amendment. Howard, 752 F.2d at 227 ("where, as here, the intent of the private party conducting the search is entirely independent of the government's intent to collect evidence for use in a criminal prosecution, we hold that the private party is not an agent of the government"). See also United States v. Coleman, 628 F.2d 961, 964 (6th Cir.1980) ("[T]he actions of a private party will not be attributed to the state unless the state actually compels the action.").
 
 B. MOTION FOR MISTRIAL
 
 18
 Foley next asserts that the trial court erred in failing to grant a mistrial. During the trial Troy Trostle testified for the government. On direct examination, Trostle attested to both his and Foley's involvement in the manufacturing of methamphetamine. Following this testimony, the defense requested a mistrial because Trostle testified about activity that preceded the commencement of the conspiracy. The court denied the motion, but offered to issue a curative instruction of Foley's choice instead. This offer was declined by defense counsel. Foley argues that the court's refusal to grant the motion for mistrial was an abuse of its discretion.
 
 
 19
 In order for the grant of a mistrial to be proper, there must be a "high degree" of certainty that declaring a mistrial was a "manifest necessity." Arizona v. Washington, 434 U.S. 497, 506 (1978). Such a manifest necessity was not present in the instant case.
 
 
 20
 The trial court found that the challenged testimony did not create any prejudice that could not be corrected by a curative instruction. J.A. at 187. Foley has presented nothing to challenge the conclusion of the trial court aside from his bare assertion that "Mr. Trostle's testimony that defendant was involved with the manufacture and distribution of methamphetamine several years prior to the time covered in the indictment was highly prejudicial." Foley Br. at 14. Where any prejudice to the defendant will be relieved by a curative instruction, it is not an abuse of discretion to deny a motion for mistrial. United States v. Bennett, 975 F.2d 305, 307 (6th Cir.1992). See also United States v. Blakeney, 942 F.2d 1001, 1031 (6th Cir.1991) (trial court's refusal to grant motion for mistrial not an abuse of discretion where admission of challenged evidence does not result in substantial prejudice), cert. denied, 112 S.Ct. 881 (1992). Accordingly, we do not find that the trial court's conclusions were an abuse of discretion.
 
 C. CALCULATION OF THE BASE OFFENSE LEVEL
 
 21
 With regard to the calculation of his base offense level, Foley asserts two errors. First, Foley claims that the trial court erred in its calculation of the amount of methamphetamine that should be attributed to him for sentencing purposes. Second, Foley claims that the trial court applied the wrong section of the Sentencing Guidelines, and thus erred in calculating his base offense level. Factual determination of the sentencing court are accorded great deference on review. Thus, they are only overturned for clear error. United States v. Garner, 940 F.2d 172, 174 (1991).
 
 
 22
 1. Computation Of The Amount Of Methamphetamine. At trial, Troy Trostle testified that he, along with Foley and a third co-conspirator, had purchased at least ten pounds of ephedrine for Foley during the span of the conspiracy. J.A. at 174, 179. The trial court determined that, based upon this quantity of ephedrine, roughly 4.08 kilograms of methamphetamine could have been produced. Assuming the accuracy of this figure, the court set defendant's base offense level at 38. Foley asserts that the trial court's calculations were merely speculative and should not be upheld on appeal.
 
 
 23
 To arrive at the 4.08 kilogram figure, the trial court relied upon the testimony of two government witnesses, one of whom was Trostle. Trostle testified that the conversion of ephedrine to methamphetamine was roughly one-to-one. J.A. at 159. In addition, the court relied on the testimony of DEA Special Agent Gary Stapleton. Stapleton testified that ten pounds of ephedrine would yield nine pounds of methamphetamine. Finally, the court relied upon sentencing exhibit 1, which was a letter from DEA forensic chemist Andrea Michiels. In this letter Michiels avers that the conversion rate of ephedrine to methamphetamine is theoretically one-to-one. J.A. at 193-94.
 
 
 24
 In light of all this evidence it cannot be said that the trial court's conclusion that 10 pounds of ephedrine would yield 4.08 kilograms of methamphetamine was clearly erroneous.
 
 
 25
 2. The Applicable Guidelines Section. Next, defendant Foley urges this court to find that the trial court's use of Sec. 2D1.1(c)(3) for sentencing purposes was inappropriate. Foley argues that he should have been sentenced under Sec. 2D1.11(d)(3), thus receiving a base offense level of 24, instead of the level 38 that was used. His argument is without merit.
 
 
 26
 Section 2D1.11(d)(3) is the sentencing guideline applicable to the unlawful distribution, importation, exportation or possession of ephedrine. However, Foley was charged with the unlawful manufacture of methamphetamine. Section 2D1.11(c)(1) specifically provides
 
 
 27
 If the offense involved unlawfully manufacturing a controlled substance, or attempting to manufacture a controlled substance unlawfully, apply Sec. 2D1.1 (Unlawful Manufacturing, Importing, Exporting, Trafficking) if the resulting offense level is greater than that determined above.
 
 
 28
 Accordingly, Sec. 2D1.11(d)(3) was not applicable, and the court correctly found a base offense level of 38 to apply under Sec. 2D1.1(c)(3).
 
 D. LEADERSHIP ROLE IN THE CONSPIRACY
 
 29
 Foley's final argument is that the trial court erred in adding two points for his leadership role in the conspiracy. Once again, a trial court's factual determinations regarding the application of the Sentencing Guidelines are afforded great deference. These findings will only be overturned upon a finding of clear error. Clear error does not exist in the instant case.
 
 
 30
 The trial court found that Foley was more than an ordinary conspirator, and thus merited application of the two-point enhancement. There was evidence in the record to support this conclusion. Troy Trostle testified that he would purchase the ephedrine in Michigan upon instruction from Foley in Washington. Trostle received money from Foley to purchase the ephedrine. In addition, Foley paid Trostle one additional dollar for every dollar that he spent on ephedrine. Finally, the evidence showed that the methamphetamine was produced in Washington. In light of this evidence it cannot be said that the trial court's conclusion that Foley was a leader of the conspiracy was clear error.
 
 III.
 
 31
 For the foregoing reasons, we AFFIRM the decision of the lower court.
 
 
 
 [1]
 Mrs. Trostle was picking the package up for her son, Troy, who was in jail at the time