UNITED STATES of America, Plaintiff,

v.

Michael Frank BARKOVITZ, Defendant.

No. 98–80679.

United States District Court,
E.D. Michigan,
Southern Division.

Dec. 10, 1998.

Daniel R. Hurley, Detroit, MI, for Plaintiff.

Kim D. Johnson, Lincoln Park, MI, for Defendant.

## OPINION AND ORDER[1]

TARNOW, District Judge.

Mr. Barkovitz challenges the seizure of the gun from his bedroom on the grounds that the police had neither a warrant nor valid consent to search his bedroom. The police maintain that they were relying on the consent of Mr. Barkovitz's twelve-year-old son, which was given after midnight, while the son was home without his parents. The Court, after conducting an evidentiary hearing, rules that the son had neither the real nor apparent authority to allow the search. Further, even if he did, the consent was not voluntarily given when a number of armed police officers confront a 70 pound youth, in the middle of the night, when the police knew his father and older brother also resided there, but were not present.

## I. Background

In the early morning hours of January 3, 1998, Lincoln Park Police responded to a "shots fired" call placed by the resident of 973 LeBlanc, Lincoln Park, Michigan, believing the shots to have come from the house next door at 979 LeBlanc. Officer Joseph Lavis testified for the government at the suppression hearing. He stated that every officer on the night shift responded to the call. Upon arrival, Officer Lavis noticed many youths fleeing the scene. There was also an adult male passed out across the street from the residences. Officer Lavis testified that he noticed a small boy, Derek Barkovitz, standing at the porch of the 979 LeBlanc residence. Officer Lavis and three other officers approached the youth. According to Lavis he asked the boy, who he recognized as a resident of the home, "Who had a gun?" or "Where is the gun?" · or something to that effect.

According to Officer Lavis, Derek Barkovitz, without a word spoken, walked him and all the officers to his father's bedroom, where Derek lifted the corner of a waterbed mattress to display a handgun. Officer Lavis immediately secured the unloaded weapon.

When the boy's father, Michael Barkovitz, Sr., who was later identified as the man unconscious across the street, came to, he was charged as a felon in possession of a firearm.

The government argues that the warrantless search was valid because young Derek Barkovitz consented to the search of the home and his father's bedroom [2].

The versions given by the police do not support a finding of consent.[3] The issue is whether Derek legally granted consent where he was without any knowledge of the significance of such an act, or without any understanding, explicit or implied, of his legal right to disallow the officers entry.

## II. Discussion

In evaluating whether the gun should be admissible evidence against Michael Frank Barkovitz, Sr. the government must prove to the court by clear and convincing evidence that Derek had the actual or apparent authority to grant the search of his family's home. Also, if he had the authority, whether the consent given was in fact voluntary.

### Actual or Apparent Authority

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated ...". A search occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. *Illinois v. Andreas*, 463 U.S. 765, 771, 103 S.Ct. 3319, 3324, 77 L.Ed.2d 1003 (1983).

---

1. Law Clerk Phil Cavanagh provided quality research assistance.

2. Although Officer Lavis mentioned at least four times that he was searching for the gun for the officers' safety, the government at the hearing expressly waived exigent circumstances as an argument, and rest their complete claim of a valid warrantless search on the consent of the child.

3. Derek Barkovitz, a small, twelve-year-old child, who allegedly granted the consent for the search, gave different testimony than that offered by the Lincoln Park police officers. Young Derek testified he was sitting in the living room when the officers opened the screen door and walked into the house, searching at will.

■ A search does not violate the Fourth Amendment where police obtain a consent to search from one who possesses common authority over the premises with the absent non-consenting target of the search. *United States v. Matlock,* 415 U.S. 164, 169, 94 S.Ct. 988, 992, 39 L.Ed.2d 242 (1974)

> [A] consent search is fundamentally different in nature from the waiver of a trial right ... [W]hen the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show the permission to search was obtained from a third party who possessed common authority over or other significant relationship to the premises or effects sought to be inspected.

*Id.* at 171, 94 S.Ct. at 993.

> Common authority is, of course, not to be implied from the mere property interest a third-party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant and historical and legal refinements, ... but rests rather on the mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-habitants has the right to permit the inspection in his own right and that others have assumed the risk that one of their number may permit the common area to be searched.

*Id.* at 171, n. 7, 94 S.Ct. at 993 n. 7.

The government relies on *United States v. Clutter,* 914 F.2d 775 (6th Cir.1990) for the proposition that a youth occupant of a home can consent to the search of the same. In *Clutter,* a police officer was able to obtain a search warrant of the defendants' home after he was invited into the residence, because the boys' father called the twelve and fourteen year old boys and instructed them to allow the police officer into the home. The boys led the officer to their mother and her boyfriend's bedroom where the officer smelled and observed large quantities of marijuana. Both the warrantless search and the subsequent search with a warrant, occurred while the mother and boyfriend were away at work. The *Clutter* Court ruled the initial search was valid because the boys were routinely left in exclusive control of the house and "the boys enjoyed that degree of access and control over the house that afforded them the right to permit inspection of any room in the house and Defendants assumed that risk." *Id.* at 778.

Although the government relies on *Clutter* for the proposition that Derek Barkovitz, a twelve-year-old, can also consent to the search of his father's home, the matter before us is different than the facts presented in *Clutter.* In *Clutter,* the boys were acting upon the advice of their father. There was an intervening adult authority that gave the boys an instruction to allow the police officer into the home. Whether the boys' father in *Clutter* had the authority to grant such permission is another matter; what is meaningful, was that the boys were acting upon the advice of a trusted non-governmental adult figure. No such non-governmental adult figure intervened to give Derek guidance.

Secondly, *Clutter* dealt with a discussion on the degree of access and control over the house that permitted the twelve and fourteen year-old youths the right to permit inspection of any room in the house. No such showing was made in this case.

> As a general consideration, there is every reason to *assume that mature family members possesses the authority to admit police to look about the family residence,* since in the common experience family members have the run of the house. So, in that sense, absent special circumstances, all rooms in the residence can be said to be areas of usage common to all members of the family. It is, of course, conceivable that family members will exclude from this common authority access to areas where they wish to maintain an expectation of privacy, even from other family members. Accordingly, courts are understandably reluctant to approve third party consent searches of an enclosed space in which a family member targeted for the search has clearly manifested in expectation of exclusivity.

*Id.* at 777–78. [Emphasis added].

Officer Vann stated that he knew the residence. He knew that Derek, Michael Frank Barkovitz, Sr. and Jr., all lived there. The officers did not inquire where Derek's older brother or father were. Derek's father, albeit incapacitated at the time, was only fifty feet from the entrance to the home. Officers made no attempt to ascertain their whereabouts; nor did the government submit any evidence to show that Derek was ever regularly left alone, as was shown in *Clutter*.

Also in *Clutter*, testimony in the evidentiary hearing showed that the boys had authority over the whole house, both apparent and actual. At the evidentiary hearing before this Court no such showing was made. The government failed to show that Derek had the actual authority to allow anyone in the house, much less his father's bedroom.

> As with other factual determinations bearing upon search and seizure, determination of consent to enter must be judged against an objective standard: would the facts available to the officer at the moment ... "warrant a man of reasonable caution in the belief" that the consenting party had authority over the premises?

*Illinois v. Rodriguez*, 497 U.S. 177, 188, 110 S.Ct. 2793, 2801, 111 L.Ed.2d 148 (1990); *quoting Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968).

■ The officers could not reasonably have concluded that Derek had apparent authority. Even assuming that Derek did lead them through the house, the officers could not have reasonably believed that a small, scared, twelve-year-old child would be left alone and have free reign over the entire home and its contents, including his father's bedroom. No person of reasonable caution could perceive this terrified child as a "mature family member". Apparent authority can not be found even without reference to the fact that Officer Lavis admitted that he knew Michael Barkovitz Junior and Senior resided there. At that hour of the morning, absent exigent circumstances, their whereabouts should have been ascertained or at least questioned[4].

## Consent

■ Assuming Derek had authority, the government failed to show valid consent. The government carries the burden to show whether the consent that was given to the police for the warrantless search was valid. *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 1791, 20 L.Ed.2d 797 (1968). It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is *per se* unreasonable ... subject only to a few specifically established and well-delineated exceptions. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). It is equally well settled that one specifically established exception to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent. *Davis v. United States*, 328 U.S. 582, 593–594, 66 S.Ct. 1256, 1261–1262, 90 L.Ed. 1453 (1946).

■ The question whether the consent given was in fact voluntary or was the product of duress or coercion, express or implied, is determined by the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973). The burden is on the prosecution to prove by clear and convincing evidence that consent was in fact freely and voluntarily given. *United States v. Gonzales*, 842 F.2d 748, 754 (5th Cir.1988). Many factors are relevant in deciding whether expressed consent was free and voluntary including: knowledge of the right to refuse consent, *Schneckloth v. Bustamonte*, 412 U.S. at 223, 93 S.Ct. at 2046, the age, the intelligence, the education of the person who gave the consent, knowledge and advice given of one's constitutional rights, the length of detention and nature of questioning, the use of physical punishment and other personal police behavior, and the cooperation of the person being searched. *Id.* at 226, 93 S.Ct. at 2047.

---

4. Although this Court is troubled by the implications of the government's argument and questions whether police should be using children to find evidence of a crime against the parent, the Court is not relying on the policy arguments of Judge Mansmann's dissenting opinion in the case of *In re Grand Jury*, 103 F.3d 1140, 45 Fed. R.Evid.Serv. 1161 (3rd Cir.1997), which advocates the establishment of a parent-child testimonial privilege.

■ Consent is not free and voluntary if given only an acquiescence to a claim of lawful authority. *Bumper v. North Carolina*, 391 U.S. at 548–49, 88 S.Ct. at 1792. The circumstances surrounding the police/citizen encounter are especially relevant in determining whether consent was freely and voluntarily given, or whether police conduct was so intrusive as vitiate consent. *Id.*

The government argues that Derek had sufficient maturity to allow the police into his father's bedroom. The government notes that Derek was crying as the police approached, but stopped because the officers had a soothing effect on Derek. This Court finds just the opposite as to Derek's maturity. Derek in his frightened crying state should have put the officers on notice that he did not have the sufficient maturity to grant them access to the home at that hour. That night Derek was awoken by the noise of a fight. He went upstairs to his living room to ascertain where his father and his brother were. He was scared and he was confused. In this confusion, four police officers came to the door of Derek's home, three in uniform, and all carrying guns. The testimony at the hearing showed that three of the four officers were above six feet tall and weighed over 240 pounds each. Derek at 4'10" and weighing only 70 pounds looked outside only to see the whole evening shift of the Lincoln Park Police Department out in front of his house and nearly a thousand pounds of men standing over him. Here the disparity in age, size, maturity and the show of force exhibited by the government, all militate in favor of the conclusion that Derek would probably have consented to any request, explicit or implicit, by the government. That he was crying, his father was knocked out and his older brother was not there, only serves to heighten the expectation of some inquiry by the officers.

The boy was not told he could withhold consent. Even in an adult context the Supreme Court has explained that knowledge of that right may be "highly relevant" to the voluntariness issue and may substantially lesson the probability that the police conduct could reasonably have appeared to [the person] to be coercive. *United States v. Mendenhall*, 446 U.S. 544, 559, 100 S.Ct. 1870, 1879, 64 L.Ed.2d 497 (1980) (plurality opinion).

The government rested its argument that the search was valid because Derek consented to the same.

Defendant filed a supplemental brief with the court on the issue of whether consent by a youngster can be valid. Defendant cited the case of *Davis v. State*, 262 Ga. 578, 422 S.E.2d 546 (1992), in which a ten-year-old boy found drugs in his step-father's bedroom and called 911 ostensibly to get his mother and step-father "some help". The boy invited the government officers into the home and they followed him to his parents' bedroom where the drugs were found. The Georgia Supreme Court first recognized the increased expectation of privacy that one has in their bedroom by saying "no expectation of privacy is more reasonable than that which one has in one's bedroom. From there, one may exclude the whole world, including one's children, and especially the government." 422 S.E.2d at 549 n. 3.

The *Davis* Court also stated "we judge it important to examine a child's mental maturity and his ability to understand the circumstances in which he is placed, and the consequences of his actions, when considering a child's age in relation to the child's ability to give valid consent." *Id.* at 549. While finding that the ten-year-old youth did not have sufficient authority to validly consent to the search of his parent's home the Court stated "we do not believe that the appellant assumed the risk that the child would compromise the appellant's constitutional rights by allowing the house to be searched." *Id.*

The most troubling aspect the *Davis* Court found was the child's youth:

The younger the child the less likely he or she can be said to have the minimal discretion required to validly consent to a search, much less waive important Constitutional Rights. Judicial vigilance is especially merited when, as here, the child is quite young. Most ten-year-old children are incapable of understanding and waiving their own rights much less those of their parents.... such a level of immaturity and naivety in the child leads us to the inescapable conclusion that Darren [the child]

lacked the degree of mental discretion necessary for a minor to give valid consent to the search of his, and his parents', home. This child simply did not know or completely understand what the consequences of his consent would be. We can not allow such an unknowing and uninformed surrender of constitutional rights.

*Id.* at 550.

The officers in the instant case, positioned on the doorstep of Derek's home, made no attempt to ascertain the relevant position of authority or maturity of their consenter. This Court finds whether the officers let themselves in or Derek held the door open is not relevant to this inquiry. Derek who is legally too young to consent to marry, too young to consent to sexual relations, was also too young in maturity to consent to the search of his home in these circumstances. Even taking the officers accounting of the facts in their most persuasive light, this Court finds that Derek was merely acquiescing to the show of force presented by the four officers. Derek did not have the presence of mind to stop the officers. Inherent in the question "where is the gun?" is a command to show them the whereabouts of any gun within his knowledge. No one asked for consent and no one gave consent. Mere acquiescence to a show of governmental force is not voluntary consent.

Under Michigan law, officers wouldn't dream of interrogating a twelve-year-old or request that the child waive his rights without the expressed consent and attendance of his parents. Similarly, on in extraordinary circumstances, not present here, could a child consent to a search of his father's bedroom.

In addition, this case is similar to the case of *United States v. Thompson,* 612 F.2d 233 (6th Cir.1979) where the defendant's girlfriend consented for officers to enter and search the defendant's mobile home only after the officers had presented her with a search warrant. The warrant was later found invalid due to lack of probable cause. The government argued unsuccessfully that the search was conducted by consent, because the girlfriend let the officers into the mobile home.

It is true that the defendant's girlfriend consented for the officers to enter and search the defendant's mobile home. But she consented only after the officers had presented her with a search warrant authorizing entry and search of the mobile home. She did not consent to a search without a warrant. Therefore the consent exception is not applicable.

*Id.* at 235.

■ Assuming Derek Barkovitz may have impliedly consented to the search for the weapon by holding the door open for the officers and guiding them to the back bedroom and even lifting up the waterbed mattress to display the weapon in plain view; Derek did so only by acquiescence in the belief that he had no other option. He believed that the officers possessed a valid right and he was under obligation to present any gun within his knowledge. The officers may have had the power, but they did not possess such a right absent a search warrant. The officers could have, and should have, acquired a search warrant; or alternatively, sought the consent of the homeowner, Derek's father, who by their testimony was only 50 ft away. If individuals who have the authority to consent are incapacitated and cannot give consent, the police must obtain a warrant. *Thompson v. Louisiana,* 469 U.S. 17, 22, n. 3, 105 S.Ct. 409, 411, n. 3, 83 L.Ed.2d 246 (1984). Michael Barkovitz, Sr. should not have any diminished expectation of privacy because of his incapacitation.

### III. Ruling

This Court finds as fact that no permission was sought and no consent was given because consent cannot be implied by mere acquiescence. The government failed to meet their burden that Derek approached an understanding of the Constitution or knowledge of his right not to consent, or voluntarily consented. Therefore, this Court finds that the gun was obtained as fruit of an illegal search and Defendants Motion to Suppress Evidence is GRANTED.