NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0050n.06
Filed: January 22, 2007

No. 05-4123

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| CURTIS PRATT, JR., | ) | |
| | ) | |
| Defendant-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| UNITED STATES OF AMERICA, | ) | STATES DISTRICT COURT FOR THE |
| | ) | NORTHERN DISTRICT OF OHIO |
| Plaintiff-Appellee. | ) | |
| | ) | |

Before: MERRITT and GIBBONS, Circuit Judges; and O'MEARA, District Judge.[*]

**JULIA SMITH GIBBONS, Circuit Judge**. Defendant-Appellant Curtis Pratt, Jr. pled

guilty in district court to one count of violating 18 U.S.C. § 922(g)(1), felon in possession of a

firearm. As part of the plea agreement, Pratt reserved his right to appeal the district court's denial

of his motion to suppress evidence obtained from his bedroom in his mother's house. The district

court found that Pratt's mother consented to the warrantless search of her house, including her son's

bedroom. For the following reasons, we affirm the district court's denial of the motion to suppress

evidence.

I.

On September 24, 2003, six law enforcement officers, including Deputy United States

---

[*]The Honorable John Corbett O'Meara, United States District Judge for the Eastern District
of Michigan, sitting by designation.

Marshall Hebert and Bureau of Alcohol, Tobacco, and Firearms Special Agent Jean-Marc Behar, went to the home of Pratt's mother, Barbara Pratt, to arrest Pratt on a warrant for assault. Pratt lived with his mother in the upper flat of a duplex she owned on Hampden Avenue in Cleveland, Ohio. Pratt did not pay rent for the single bedroom he occupied in the flat.

The six officers were met by Pratt's mother and his aunt, Margaret Pratt, when they arrived at the residence. Although she actually owned the residence, Barbara Pratt incorrectly informed the officers that she was the sole leaseholder. She also informed the officers that Pratt "stayed" there. Pratt's mother ultimately clarified to the officers that she alone had legal possession of the residence.

The officers requested to search the residence for Curtis Pratt, but his mother notified them that he was not present. Hebert then asked to further search the premises for weapons or drugs and presented Pratt's mother with a "Consent to Search" form. Barbara Pratt signed the form, which authorized the officers "to conduct a complete search of [the] premises" and to take from the premises "any letters, papers, materials or other property which they may desire." Pratt has not asserted that his mother's consent was coerced or otherwise improperly obtained.

During the search, the officers came upon Pratt's locked bedroom door. The parties dispute whether Pratt's mother provided the officers with a key to the bedroom. Barbara Pratt testified, however, that she ordinarily kept an extra key to Pratt's bedroom but had given this spare key to Pratt the day before because Pratt had misplaced his key. Pratt's mother further testified that she "had access to [the room] any time [she] wanted." According to Pratt's mother, she currently did not have a key only because her son had recently borrowed it and failed to

2

return it. Nonetheless, the officers somehow gained entry to the room. Once inside, Behar discovered a pistol and ammunition in a dresser drawer.

Pratt subsequently moved to suppress all evidence obtained from the locked bedroom. The district court denied his motion to suppress. Pratt has appealed the denial on the grounds that his mother lacked authority to consent to the search of the locked bedroom and that the police were unreasonable in relying on an appearance that she had such authority.

## II.

Review of a district court's denial of a motion to suppress is for clear error as to findings of fact and *de novo* as to conclusions of law. *United States v. Henry*, 429 F.3d 603, 607 (6th Cir. 2005).

## III.

The Fourth Amendment recognizes as valid a warrantless search of a person's house when a person possessing authority over the house gives consent to the search. *Georgia v. Randolph*, 126 S. Ct. 1515, 1520 (2006) (citing *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990)). "That person might be . . . a fellow occupant who shares common authority over property, when the suspect is absent, and the exception for consent extends even to entries and searches with the permission of a co-occupant whom the police reasonably, but erroneously, believe to possess shared authority as an occupant." *Id.* (citing *Rodriguez*, 497 U.S. at 186; *United States v. Matlock*, 415 U.S. 164, 170 (1974); *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973)).

A warrantless search does not violate the Fourth Amendment when a person who possesses common authority over the premises with the suspect consents to the search. *Matlock*, 415 U.S. at

3

170-71.  "Common authority" derives from the "mutual use of the property by persons generally having joint access or control for most purposes."  *Id.* at 171 n.7.  Typically, all family members have common authority over all of the rooms in the family residence.  *United States v. Clutter*, 914 F.2d 775, 777 (6th Cir. 1990).  However, family members may be deprived of common authority access to an enclosed space over which one family member has "clearly manifested an expectation of exclusivity."  *Id.* at 778.

Mere possession or non-possession of a key at the time of a search is not dispositive in determining whether a co-occupant has common authority over an enclosed space.  *See Rodriguez*, 497 U.S. at 181 (co-occupant did not have common authority though she had keys to the residence); *United States v. Gillis*, 358 F.3d 386, 390 (6th Cir. 2004) (noting the district court's finding that a co-occupant had common authority though she did not have keys to the residence's exterior doors).  Instead, courts consider a number of factors in determining whether common authority exists, including: whether the co-occupant owns the residence or is named on the lease; if the individual contributed rent; and whether the individual visited the residence when the co-occupant was not present.  *See Rodriguez*, 497 U.S. at 181.

Here, although we assume that Barbara Pratt lacked a key to her son's bedroom at the time of the search, it is clear that she ordinarily retained a key to the room and accordingly had regular access to the room.  As such, Pratt did not have a clear expectation of exclusivity by simply locking the door.  Moreover, Pratt provides no authority to support the proposition that, by itself, a temporary inability to access a room for lack of a key deprives a co-occupant of common authority over that room.  On the contrary, the case law places no particular emphasis on whether co-occupants possess

keys in determining their authority over an enclosed space; possession of a key is merely a factor in the analysis. *See, e.g.*, *Rodriguez*, 497 U.S. at 181; *see also Gillis*, 358 F.3d at 390. Pratt's mother had title to the entire residence, including Pratt's bedroom. Pratt did not even contribute rent. Barbara Pratt lived in the residence and had access to Pratt's room "anytime [she] wanted." In light of these facts, we conclude that Barbara Pratt had actual authority to consent to the search of her son's locked bedroom.

## IV.

Although the determination that Barbara Pratt had actual authority to consent to the search is dispositive of the appeal, we consider the issue of apparent authority as well. The police may also search a residence with the permission of an occupant whom they reasonably, even if erroneously, believe to have authority to consent to the search. *Rodriguez*, 497 U.S. at 186. Shared occupancy has been found to include an "assumption of risk" that one occupant might permit a search of the premises against the wishes of an absent co-occupant. *Randolph*, 126 S. Ct. at 1522; *Matlock*, 415 U.S. at 171 n.7. Further, police officers are entitled to rely on this "assumption of risk," and there is no burden on the police to eliminate the possibility of atypical shared occupancy arrangements absent some "reason to doubt that the regular scheme is in place." *Randolph*, 126 S. Ct. at 1522. In fact, "it would be unjustifiably impractical to require the police to take affirmative steps to confirm the actual authority of a consenting individual whose authority was apparent." *Id.* at 1527.

Typically, all family members have common authority over all of the rooms in the family residence. *Clutter*, 914 F.2d at 777. Evidence that the co-occupant is a leaseholder of the residence strongly supports the reasonableness of an officer's reliance on the co-occupant's apparent authority.

5

*Gillis*, 358 F.3d at 390. Further, officers may also reasonably rely on the apparent authority of a co-occupant who merely "shows that she belongs" in a residence. *Randolph*, 126 S. Ct. at 1521. Police officers may also reasonably rely on the appearance of authority even when a co-occupant does not have a key to the premises. *Gillis*, 358 F.3d at 390.

In this case, the officers had no reason to conclude that Pratt's mother did not have authority to consent to a search of a bedroom occupied by her son, as family members typically have authority over the entire family residence. In addition, Barbara Pratt identified herself to the officers as the sole leaseholder of the residence. Barbara Pratt also "showed that she belonged" in the residence because she was entertaining a guest, Margaret Pratt, and further by authorizing the officers to search the premises for her son. The mere fact that Barbara Pratt temporarily lacked a key to the bedroom would not have made the officers' reliance on the appearance of her authority unreasonable. We therefore conclude that, even if she lacked actual authority, Barbara Pratt had apparent authority to consent to the search of her son's locked bedroom.

V.

For the foregoing reasons, the district court's denial of the appellant's motion to suppress is **AFFIRMED**.

MERRITT, Circuit Judge, dissenting. Here one of the deputy marshals asked for Ms. Pratt's permission to search the residence for weapons and drugs and presented a consent to search form, stating that Ms. Pratt consented to a "complete search" of her premises. Ms. Pratt signed the document and stated that Pratt, her son, did not pay rent. The door to Pratt's bedroom was locked. The District Court stated explicitly that "the record tends to reflect that Barbara Pratt did not possess a key during the search . . . ." (J.A. 31). Ms. Pratt testified that she told the officers that she generally kept a key to Pratt's room but had given the key to Pratt the day before at his request. Thus, it seems clear that the officers entered and searched the locked room without the permission of the occupant. They must have done so by breaking the lock, not by unlocking the door.

When Pratt took back his mother's key to his locked bedroom, the situation changed. The locked bedroom door — locked without a key available from anyone other than the occupant — makes this situation different from others where common authority existed over an openly accessible room. Pratt's actions in taking back the key and stashing contraband in a dresser drawer signals his expectation of exclusivity. Under these circumstances I do not think the government has carried its burden of showing that Ms. Pratt — with no key and no way to enter — had either actual or apparent common authority to consent to the search of her adult son's bedroom.

The majority's holding that Ms. Pratt had actual authority to consent to the search of Pratt's room is directly contrary to the applicable test from *United States v. Matlock*, 415 U.S. 164 (1974) and contradicts relevant precedent from this Court and others. As my colleagues note, an individual has common authority if she has "mutual use of the property" with "joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit

7

the inspection in his own right and that the others have assumed the risk." *Id.* at 171 n.7, *quoted in Georgia v. Randolph*, ____ U.S. ____, 126 S. Ct. 1515, 1521 (2006). The court believes that Ms. Pratt had "mutual use" and "joint access or control" of Pratt's room — even though Pratt withdrew from his mother any use or access by locking the door and retaining the only key. How Mrs. Pratt has "mutual use" of her son's locked bedroom which she cannot enter is left unexplained. This contradiction runs counter to cases finding no actual common authority over an enclosed area in the home in which a non-minor child targeted for the search "has clearly manifested an expectation of exclusivity." *United States v. Clutter*, 914 F.2d 775, 777 (6th Cir. 1990); *see also State v. Vinuya*, 32 P.3d 116, 131-32 (Haw. Ct. App. 2001) (mother without a key did not have actual common authority to consent to a search of her son's locked bedroom); *State v. Gordnoshnka*, No. 86319, 2006 WL 302354, at *4 (Ohio Ct. App. Feb. 9, 2006) (unpublished) (father without keys or a right of access to his son's locked bedroom did not have actual authority to consent to a search thereof). On the other hand, had Pratt left his door unlocked or provided his mother a key, there would be little doubt that Ms. Pratt would have had actual common authority. *See Clutter*, 914 F.2d at 778 (minor children had common authority to consent to inspection of their parents' open bedroom); *United States v. Cork*, 18 Fed. App. 376, 383 (6th Cir. Sept. 6, 2001) (unpublished) (homeowner had common authority over unlocked bedroom shared by her nephew); *State v. Harris*, 642 A.2d 1242, 1247 (Del. Super. Ct. 1993) (mother with a key to her son's locked bedroom possessed common authority over the room).

The two cases cited for the finding of actual common authority, *United States v. Gillis*, 358 F.3d 386 (6th Cir. 2004) and *Illinois v. Rodriguez*, 497 U.S. 177 (1990), provide no support for that

proposition. *Gillis* expressly declined to address whether actual authority was present: "Because we agree with the district court's decision that Williams had apparent authority, we need not consider whether she also possessed actual authority." *Gillis*, 358 F.3d at 391. In *Rodriguez*, the Supreme Court went a step further, holding that no actual authority existed and proceeded to analyze the case under the doctrine of apparent common authority. *Rodriguez*, 497 U.S. at 179, 181-82, 189.

The location of the contraband in a dresser drawer makes Ms. Pratt's purported authority even less reasonable. *See Randolph*, 126 S. Ct. at 1522 ("when it comes to searching through bureau drawers, there will be instances in which even a person clearly belonging on premises as an occupant may lack any perceived authority to consent . . . ."); *Clutter*, 914 F.2d at 778 (stating that, although minor children had authority to consent to a search of their parents' open bedroom, their authority to consent to a search of a bureau drawer therein was "a closer question"). *Randolph* is the Supreme Court's latest decision on consent searches. It holds that "a warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident." *Randolph*, 126 S. Ct. at 1526. By analogy, an absent resident cannot be held to have given consent to search dresser drawers when he has locked his room and has the only key. There cannot be apparent authority to search in dresser drawers or other nooks and crannies of the room when the police must break the lock or climb in a window in order to gain access to the room. We should not permit the erosion of Fourth Amendment principles that has taken place in this case.