MERRITT, Circuit Judge,
dissenting.
Here one of the deputy marshals asked for Ms. Pratt’s permission to search the residence for weapons and drugs and presented a consent to search form, stating that Ms. Pratt consented to a “complete search” of her premises. Ms. Pratt signed the document and stated that Pratt, her son, did not pay rent. The door to Pratt’s bedroom was locked. The District Court stated explicitly that “the record tends to reflect that Barbara Pratt did not possess a key during the search....” (J.A. 31). Ms. Pratt testified that she told the officers that she generally kept a key to Pratt’s room but had given the key to Pratt the day before at his request. Thus, it seems clear that the officers entered and searched the locked room without the permission of the occupant. They must have done so by breaking the lock, not by unlocking the door.
When Pratt took back his mother’s key to his locked bedroom, the situation changed. The locked bedroom door— locked without a key available from anyone other than the occupant—makes this situation different from others where common authority existed over an openly accessible room. Pratt’s actions in taking back the key and stashing contraband in a dresser drawer signals his expectation of exclusivity. Under these circumstances I do not think the government has carried its burden of showing that Ms. Pratt—with no key and no way to enter—had either actual or apparent common authority to consent to the search of her adult son’s bedroom.
The majority’s holding that Ms. Pratt had actual authority to consent to the search of Pratt’s room is directly contrary to the applicable test from United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974) and contradicts relevant precedent from this Court and others. As my colleagues note, an individual has common authority if she has “mutual use of the property” with “joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk.” Id. at 171 *537 n. 7, 94 S.Ct. 988, quoted in Georgia v. Randolph, 547 U.S. 103, 126 S.Ct. 1515, 1521, 164 L.Ed.2d 208 (2006). The court believes that Ms. Pratt had “mutual use” and “joint access or control” of Pratt’s room—even though Pratt withdrew from his mother any use or access by locking the door and retaining the only key. How Mrs. Pratt has “mutual use” of her son’s locked bedroom which she cannot enter is left unexplained. This contradiction runs counter to cases finding no actual common authority over an enclosed area in the home in which a non-minor child targeted for the search “has clearly manifested an expectation of exclusivity.” United States v. Clutter, 914 F.2d 775, 777 (6th Cir.1990); see also State v. Vinuya, 96 Hawai'i 472, 32 P.3d 116, 131-32 (2001) (mother without a key did not have actual common authority to consent to a search of her son’s locked bedroom); State v. Gordnoshnka, No. 86319, 2006 WL 302354, at *4 (Ohio Ct.App. Feb. 9, 2006) (unpublished) (father without keys or a right of access to his son’s locked bedroom did not have actual authority to consent to a search thereof). On the other hand, had Pratt left his door unlocked or provided his mother a key, there would be little doubt that Ms. Pratt would have had actual common authority. See Clutter, 914 F.2d at 778 (minor children had common authority to consent to inspection of their parents’ open bedroom); United States v. Cork, 18 Fed.Appx. 376, 383, 2001 WL 1069814 (6th Cir. Sept. 6, 2001) (unpublished) (homeowner had common authority over unlocked bedroom shared by her nephew); State v. Harris, 642 A.2d 1242, 1247 (Del.Super.Ct.1993) (mother with a key to her son’s locked bedroom possessed common authority over the room).
The two cases cited for the finding of actual common authority, United States v. Gillis, 358 F.3d 386 (6th Cir.2004) and Illinois v. Rodriguez, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990), provide no support for that proposition. Gillis expressly declined to address whether actual authority was present: “Because we agree with the district court’s decision that Williams had apparent authority, we need not consider whether she also possessed actual authority.” Gillis, 358 F.3d at 391. In Rodriguez, the Supreme Court went a step further, holding that no actual authority existed and proceeded to analyze the case under the doctrine of apparent common authority. Rodriguez, 497 U.S. at 179, 181-82, 189, 110 S.Ct. 2793.
The location of the contraband in a dresser drawer makes Ms. Pratt’s purported authority even less reasonable. See Randolph, 126 S.Ct. at 1522 (“when it comes to searching through bureau drawers, there will be instances in which even a person clearly belonging on premises as an occupant may lack any perceived authority to consent....”); Clutter, 914 F.2d at 778 (stating that, although minor children had authority to consent to a search of their parents’ open bedroom, their authority to consent to a search of a bureau drawer therein was “a closer question”). Randolph is the Supreme Court’s latest decision on consent searches. It holds that “a warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident.” Randolph, 126 S.Ct. at 1526. By analogy, an absent resident cannot be held to have given consent to search dresser drawers when he has locked his room and has the only key. There cannot be apparent authority to search in dresser drawers or other nooks and crannies of the room when the police must break the lock or climb in a window in order to gain access to the room. We should not permit *538 the erosion of Fourth Amendment principles that has taken place in this case.