Greg FARMER, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2004–CA–000865–MR.

Court of Appeals of Kentucky.

July 15, 2005.

Justin Thomas Genco, Stanford, KY, for appellant.

Gregory D. Stumbo, Attorney General of Kentucky, Clint Evans Watson, Assistant Attorney General, Frankfort, KY, for appellee.

Before BARBER, KNOPF and SCHRODER, Judges.

## OPINION

SCHRODER, Judge.

This is an appeal from a judgment pursuant to a conditional guilty plea to two counts of second-degree assault stemming from an automobile collision. Appellant argues that the toxicology results of a blood/urine test should have been suppressed because he only gave his consent to have his blood tested for alcohol, not controlled substances, pursuant to a consent form presented to him at the hospital. We adjudge that appellant's initial general consent to police was not limited by the consent form subsequently submitted to appellant by the hospital. Accordingly, the trial court properly found that appellant consented to the drug testing of his blood and urine. Thus, we affirm.

On October 6, 2002, Officer Kendra Wilson of the Pulaski County Sheriff's Department responded to a report of a motor vehicle accident. Upon arriving at the scene, appellant, Greg Farmer, was sitting alongside the road. Farmer had been driving and was the sole occupant of one of the cars, although he did not own the car. Angela and Daniel Baker were in the other car involved in the accident, and both were injured in the collision. Officer Wilson found a red straw in the car Farmer had been driving, which Wilson suspected had been used for ingesting a controlled substance. Indeed, the straw later tested positive for traces of oxycodone and hydrocodone. Upon discovering the straw, Officer Wilson asked Farmer if he would consent to tests of his blood and urine. Farmer stated that he would agree to the tests.

Thereafter, Officer Wilson gave a blood and urine test kit to an emergency medical worker at the scene to be administered by hospital emergency personnel at the hospital where Farmer was to be taken. Officer Wilson testified that she gave the kit to the emergency medical worker because Wilson had to stay at the scene of the collision. Farmer was thereafter transported by ambulance to Lake Cumberland Regional Hospital ("LCRH"). According to Officer Wilson, Farmer was not under arrest or in police custody at the scene of the accident or at the hospital. Once at the hospital, Jennifer Latham, a registered nurse who worked in the emergency room, presented Farmer with a blood-alcohol test consent form. The form presented to Farmer was a standard consent form that the hospital used to check a patient's blood-alcohol content when ordered by a physician or police. According to Latham, it is the only consent form used by the hospital to test a patient's blood or urine for alcohol or drugs. The form was entitled "POLICY FOR CONSENT OF BLOOD ALCOHOL", and made no mention of testing the patient's urine or testing the patient's blood for anything but alcohol. When asked by Latham if he would agree to the information contained in the form, Farmer verbally responded that he would. Latham then signed Farmer's name to the form. Thereupon, Latham took a blood sample from Farmer and a urine sample from his catheter bag.

Officer Wilson picked up Farmer's blood and urine samples at the hospital that same day and mailed the samples to the Kentucky State Police ("KSP") crime lab.

Officer Wilson never spoke with Farmer at the hospital. The results of the KSP tests revealed that Farmer had cannabinoid metabolites (marijuana) in his urine and Citalopram, a mood altering drug, in his blood and urine. No alcohol, oxycodone or hydrocodone were found.

As a result of the motor vehicle collision, Farmer was indicted on March 26, 2003 for: operating a motor vehicle under the influence of alcohol or drugs, second offense ("DUI II"); operating a motor vehicle while license suspended or revoked for DUI, first offense; failure to maintain liability insurance on a motor vehicle; and on two counts of first-degree assault relative to the injuries sustained by Angela and Daniel Baker. The court subsequently dismissed the charges for operating a motor vehicle on a suspended or revoked license and failure to maintain liability insurance on a motor vehicle.

On May 28, 2003, Farmer filed a motion to suppress the results of the toxicology tests on his blood and urine. After a full suppression hearing on the motion, the court denied the motion on February 11, 2004.

Pursuant to a plea agreement, Farmer entered a conditional *Alford* plea to two counts of second-degree assault in exchange for the Commonwealth's agreement to amend the first-degree assault charges to second-degree assault, to dismiss the remaining charge of DUI II, and to recommend a concurrent sentence of ten years' imprisonment on each assault charge. On April 22, 2004, Farmer was sentenced according to the Commonwealth's recommendation to a total of ten years in prison. This appeal by Farmer followed.

■ Farmer's first argument is that the Commonwealth exceeded the scope of his consent to search by testing his blood and urine for controlled substances. Farmer

contends that since the consent form at the hospital was limited to blood-alcohol testing, the Commonwealth could not lawfully test his blood for controlled substances or test his urine at all.

■ The taking of a blood or urine sample is considered a search of the person and subject to Fourth Amendment and state constitutional limitations on searches. *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Consent to search is an exception to the warrant requirement. *Commonwealth v. Erickson*, 132 S.W.3d 884 (Ky.App.2004); *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The Commonwealth has the burden of showing by a preponderance of the evidence, through clear and positive testimony, that valid consent to search was obtained. *U.S. v. Riascos–Suarez*, 73 F.3d 616 (6th Cir. 1996), *cert. denied*, 519 U.S. 848, 117 S.Ct. 136, 136 L.Ed.2d 84 (1996). Even when a search is authorized by consent, the scope of the search is limited by the terms of its authorization. *Shamaeizadeh v. Cunigan*, 338 F.3d 535 (6th Cir.2003), *cert. denied*, 541 U.S. 1041, 124 S.Ct. 2159, 158 L.Ed.2d 729 (2004). "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S.Ct. 1801, 1804, 114 L.Ed.2d 297, 302 (1991) (quoting *Illinois v. Rodriguez*, 497 U.S. 177, 183–189, 110 S.Ct. 2793, 2798–2802, 111 L.Ed.2d 148 (1990)).

In the instant case, according to the testimony of Officer Wilson, Farmer verbally gave his general consent to tests on his blood *and* urine. Farmer did not indicate any limitation on the type of tests to be run when he gave his verbal consent to

Wilson. In viewing the language of the consent form subsequently signed by Farmer at the hospital, it is clear that the form was not a document submitted by police, but rather by the hospital for the hospital's protection. The form makes reference to "protect[ing] LCRH employees from charges of assault and battery," and disclaims liability of the hospital and its employees "arising out of the taking of the blood sample." The form was presented to Farmer by Jennifer Latham, a nurse in the emergency room, and Officer Wilson, who picked the samples for the police, had no contact with Farmer at the hospital.

The Court of Appeals of Georgia had a similar issue before it in *State v. Lewis,* 233 Ga.App. 390, 504 S.E.2d 242 (1998), wherein the DUI suspect gave her consent to police at the scene of the accident, pursuant to that state's implied consent notice, to tests of her blood and urine for alcohol or drugs. Later, when the suspect was taken to a local hospital for the tests, she signed a form required by the hospital consenting to having a blood sample taken for alcohol testing. As in the present case, the hospital form did not mention testing for controlled substances. Pursuant to tests performed by the state's crime lab, the suspect's blood and urine tested positive for marijuana. Like the instant case, the suspect argued that the results of the drug tests on her blood and urine should be suppressed because the consent form she signed at the hospital only gave consent for blood-alcohol testing. The Court ruled that the lower court erred in granting the suppression motion, reasoning:

> Whatever the form prepared by the hospital may have said or led Lewis to believe, it had no bearing on the State's right to test Lewis' blood and urine for alcohol or drugs pursuant to the consent she gave after receiving the required implied consent notice.... Nothing on the form prepared by the hospital, in-

> cluding the statement signed by the officer, could be construed as action taken by the State in violation of the statutory requirements of implied consent.

*Id.* at 244 (citations omitted).

A trial court's findings of fact pursuant to a suppression motion will not be overturned unless they are clearly erroneous i.e. not supported by substantial evidence. RCr 9.78; *Commonwealth v. Banks,* 68 S.W.3d 347 (Ky.2001); *Diehl v. Commonwealth,* 673 S.W.2d 711 (Ky.1984). Although Farmer was not under arrest at the time of consent and thus Kentucky's implied consent provisions had no bearing in the present case, Farmer did give police his express general consent to tests of his blood and urine. In our view, the subsequent consent form submitted by the hospital did not operate to withdraw his earlier consent to police or limit his consent to just blood-alcohol testing. Accordingly, the trial court's finding that Farmer consented to the drug testing of his blood and urine was not clearly erroneous.

■ Farmer's remaining argument is that the trial court erred in not addressing Farmer's motion to exclude the urine test results based upon their unfairly prejudicial effect. Farmer argued at the suppression hearing that the results of his urine test, which revealed the presence of marijuana, were not sufficiently probative so as to outweigh the prejudicial impact of such evidence. Hence, under KRE 403, those test results should have been excluded. The trial court failed to address this argument in its opinion and order on the suppression motion. However, Farmer did not bring this failure to the attention of the trial court as required by CR 52.04. *See* RCr 13.04. Accordingly, the issue was waived.

For the reasons stated above, the judgment of the Pulaski Circuit Court is affirmed.

ALL CONCUR.