COMMONWEALTH of Kentucky,
Appellant,

v.

Dedra HATCHER, Appellee.

No. 2004–SC–0242–DG.

Supreme Court of Kentucky.

May 18, 2006.

Rehearing Denied Sept. 21, 2006.

Gregory D. Stumbo, Attorney General of Kentucky, James Havey, Assistant Attorney General, Criminal Appellate Division, Office of Attorney General, Frankfort, for Appellant.

Thomas M. Ransdell, Assistant Public Advocate, Department of Public Advocacy, Frankfort, for Appellee.

Opinion of the Court by Justice JOHNSTONE.

Appellee, Dedra Hatcher, entered a conditional guilty plea in the McCracken Circuit Court to second offense possession of drug paraphernalia following the trial court's denial of her motion to suppress evidence seized during a warrantless search of her residence. The Court of Appeals reversed the judgment and remanded the case to the trial court. This Court thereafter granted the Commonwealth's motion for discretionary review. For the reasons set forth herein, we now affirm the decision of the Court of Appeals.

In November 2001, the Paducah Police Department received an anonymous report of an allegedly abandoned minor. Officer Darryl Carr and two other officers responded to the complaint. Upon arriving at the home in question, Officer Carr first knocked on the front door. After receiving no response, Officer Carr peered in a front window and viewed someone asleep on the couch. The officer again knocked on the door, and Hatcher's adolescent son eventually responded.

When the front door was opened, Officer Carr observed a pipe sitting on a table in the front room. Officer Carr described the pipe as being ceramic, having a stem two to four inches long, with a large bowl bearing a skull on the front of it. Officer Carr thereafter asked the minor if he could enter the residence. Officer Carr picked up the pipe and detected an odor of marijuana emanating from it.

Hatcher returned home as officers were preparing to leave. She admitted to owning the pipe, claiming that it was for personal use. She was thereafter arrested and charged in the McCracken Circuit Court with possession of drug paraphernalia, second offense.

Prior to trial, defense counsel moved to suppress the pipe on the grounds that it had been seized in violation of Hatcher's rights under the Fourth and Fourteenth Amendments to the United States Constitution and Section Ten of the Kentucky Constitution. In its order denying Hatcher's motion, the trial court determined that seizure of the pipe fit within the "plain view" exception to the prohibition against warrantless searches. Specifically, the trial court found:

On or about November 22, 2001, Officer Darryl Carr of the Paducah Police Department responded to a complaint of an abandoned minor at the defendant's residence at 733 Keorner Street, Paducah, Kentucky. Officer Carr observed the defendant's child asleep on the couch and knocked on the door. When the child opened the door Officer Carr observed in plain view an item which Officer Carr believed to be a device used for smoking marijuana or other illegal substances in the living room. Officer Carr's belief that the item was to be used for smoking marijuana was based upon his training and experience as a Paducah Police Officer. The child allowed Officer Carr into the residence and upon further examination Officer Carr detected the odor of marijuana emanating from the pipe. Officer Carr then seized the pipe.

Hatcher thereafter entered a conditional guilty plea pursuant to RCr 8.09 to one

count of second offense use/possession of drug paraphernalia.

The Court of Appeals reversed the trial court, holding that Officer Carr's testimony at the suppression hearing did not satisfy the elements of the "plain view" exception to warrant requirement because the pipe's status as drug paraphernalia was not immediately apparent. The court further concluded that no exigent circumstances supported the officer's entry into the home.

■ The Fourth Amendment of the United States Constitution and Section Ten of the Kentucky Constitution provide safeguards against an unwarranted and unreasonable search and seizure by the state. As espoused by the United States Supreme Court, "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment-subject only to a few specifically established and well delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). One such exception is evidence found within "plain view." *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). *See also Horton v. California,* 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). In *Hazel v. Commonwealth,* 833 S.W.2d 831, 833 (Ky.1992), this Court discussed the elements that must exist before evidence seized pursuant to the "plain view" exception may be admitted:

First, the law enforcement officer must not have violated the Fourteenth Amendment in arriving at the place where the evidence could be plainly viewed. Second, "not only must the officer be lawfully located in a place from which the object can be plainly seen, but he or she must have a lawful right of access to the object itself." Finally, the

object's "incriminating character must also be 'immediately apparent.'" [*Coolidge,* 403 U.S. at 466, 91 S.Ct. at 2038.]

■ Officer Carr was certainly authorized to knock on Hatcher's door to respond to the report of an allegedly abandoned minor. Further, Hatcher's Fourteenth Amendment rights were not violated when Officer Carr looked into her house through the opened door. Nevertheless, we conclude, as did the Court of Appeals, that the search in this case must fail under the second two elements of the "plain view" analysis.

Officer Carr did not have a warrant authorizing his entry into Hatcher's residence. As such, his entrance must have been precipitated by some exigent circumstance, such as threat of injury or destruction of evidence. Officer Carr's presence at Hatcher's residence was to validate the anonymous report of an abandoned minor. Yet, Officer Carr did not attempt to corroborate the report by asking the minor if he was okay or if he was even, in fact, alone. Rather, upon viewing the pipe, Officer Carr simply asked the minor if he could come in.

■ Justice Graves, in his dissenting opinion, erroneously states that we concede once Officer Carr entered Hatcher's residence and smelled marijuana, "he had probable cause to seize the pipe as it was in plain view and was likely to be destroyed or concealed if he did not immediately take steps to secure the evidence." (Dissenting opinion p. 132). First, contrary to the dissent's repeated mischaracterization of the evidence, a review of the record confirms that Officer Carr did not detect an odor of marijuana until he physically picked up the pipe and smelled it. Further, not even Officer Carr alleged *any* exigent circumstances which he believed justified his immediate entry into the

home. There was certainly no argument presented to the trial court that the adolescent was perceived as a threat or that there was any fear he would destroy or conceal the pipe. "Before agents of the government may invade the sanctity of the home, the burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries." *Welsh v. Wisconsin*, 466 U.S. 740, 750, 104 S.Ct. 2091, 2098, 80 L.Ed.2d 732 (1984). *See also Commonwealth v. McManus*, 107 S.W.3d 175 (Ky. 2003), *cert. denied*, 540 U.S. 1017, 124 S.Ct. 571, 157 L.Ed.2d 431 (2003).

■ As Officer Carr was not authorized to enter Hatcher's residence, the incriminating nature of the pipe must have been "immediately apparent" from his vantage point in the doorway. The interpretation of "immediately apparent" has presented reviewing courts with significant difficulty. In *United States v. McLevain*, the Sixth Circuit Court of Appeals noted that "upon viewing the object, the officer must *at that moment* have probable cause to believe the object to be contraband or evidence of illegal activity." 310 F.3d 434, 442 (6th Cir.2002), *quoting United States v. Tucker*, 305 F.3d 1193, 1198 (10th Cir.2002). The court further noted that "when an item appears suspicious to an officer but further investigation is required to establish probable cause as to its association with criminal activity, the item is not immediately incriminating." *Id.* at 443.

In *Arizona v. Hicks*, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987), police officers had entered Hick's apartment in search of a shooting suspect. While in the apartment, one of the officers noticed several expensive stereo components. Suspecting they were stolen, the officer moved the components in an effort to report the serial numbers. Upon being advised that the components had been taken in an armed robbery, the officer seized them. The Arizona trial court and court of appeals held that suppression of the evidence was warranted on the grounds that although the initial warrantless search of Hick's apartment was justified by the exigent circumstances of the shooting, the additional "search" of the stereo components was unrelated to that exigency. Both courts rejected the State's contention that the officer's actions were justified under the "plain view" doctrine.

The U.S. Supreme Court upheld the lower courts, holding that the officer's moving of the stereo components to obtain the serial numbers constituted an unjustified "search" separate and apart from the search for the shooter. Further, the Court enunciated for the first time that probable cause is required to invoke the plain view doctrine.

> Dispensing with the need for a warrant is worlds apart from permitting a lesser standard of *cause* for the seizure than a warrant would require, *i.e.*, the standard of probable cause. No reason is apparent why an object should routinely be seizable on lesser grounds, during an unrelated search and seizure, than would have been needed to obtain a warrant for that same object if it had been known to be on the premises.

*Id.* at 327, 107 S.Ct. at 1153–54 (emphasis in original). Notably, in responding to Justice Powell's dissenting opinion, the majority pointed out that the "distinction between 'looking' at a suspicious object in plain view and 'moving' it even a few inches is much more than trivial for purposes of the Fourth Amendment." *Id.* at 325, 107 S.Ct. at 1152. Apparently, the dissenting opinion herein fails to recognize this distinction as well.

Officer Carr testified that he observed a pipe sitting on the table that, based on his

experience and training, was predominantly used to smoke marijuana. Officer Carr conceded, however, that he did not observe any marijuana or other drug paraphernalia, nor could he see any residue in the pipe from his vantage point. Officer Carr further testified that the particular type of pipe was legal to purchase and could be used to smoke tobacco. Importantly, at the time Officer Carr observed the pipe, he had not spoken with Hatcher and was unaware of her prior conviction for possession of drug paraphernalia. Thus, Officer Carr had no probable cause to believe the pipe was drug paraphernalia until he picked it up and smelled the odor of marijuana. However, such is analogous to the search condemned in *Arizona v. Hicks.* We find no distinction between the manipulation of a pipe to discern the odor of marijuana and the manipulation of stereo components to retrieve serial numbers. Although the pipe appeared suspicious to Officer Carr, further investigation was required to establish probable cause as to its association with criminal activity, and thus it simply was not immediately incriminating. *See McLevain, supra.*

■ We note that the Commonwealth devotes a great deal of effort in this Court, as it did in the Court of Appeals, in arguing that the pipe was produced as a result of a consensual search. However, we agree with the Court of Appeals that such claim is not preserved for review. Indeed, the Commonwealth's sole theory during the suppression hearing was one of "plain view," and we limit our opinion herein to that context. At no point did the Commonwealth contend that Hatcher's son voluntarily consented to the search, and we do not undertake at this time to determine the legally validity of a minor's consent to a search of the family residence.

In arguing that the consent issue is, in fact, preserved, the dissenting opinion makes the bald assertion that there is "substantial evidence in the record" to support the conclusion that the trial court considered the issue and properly ruled that the minor consented to Officer Carr's search of the premises. Yet, the "record" that the dissent relies upon contains absolutely nothing other than Officer Carr's testimony. Neither the Commonwealth nor the defense presented any other evidence during the suppression hearing. Thus, it is difficult to perceive how the trial court could have possibly made an informed decision regarding the legal effect of the minor's actions without the benefit of the minor's testimony or even accurate information as to his age.

For such reason, we conclude that the dissent's citation to federal authority is neither "directly on point," nor indicates "unequivocally that the adolescent in this case had the common authority to allow Officer Carr into the home." (Dissenting opinion, p. 130). Rather, in *United States v. Clutter,* 914 F.2d 775 (6th Cir.1990), *cert. denied,* 499 U.S. 947, 111 S.Ct. 1413, 113 L.Ed.2d 466 (1991), the Sixth Circuit Court of Appeals noted that "mature family members" may possess the authority to admit police into the family premises. Similarly, the Eleventh Circuit Court of Appeals in *Lenz v. Winburn,* 51 F.3d 1540, 1548 (11th Cir.1995), opined that an "individualized assessment" of the minor is crucial to determining the voluntariness of the consent. Thus, it is clear from a cursory reading of these opinions that the age and actions of the minor must be considered in determining whether consent was given. Here, other than Officer Carr's testimony, there was no evidence presented during the suppression hearing concerning the age or maturity of Hatcher's son. Accordingly, it belies reason to assert that the trial court considered and ruled on the

consent issue. The record herein simply does not support such a conclusion.

Again, the Commonwealth's sole theory at the suppression hearing was that the seizure of the pipe fell within the "plain view" exception to the warrant requirement. The Commonwealth had the burden to show that at the moment Officer Carr observed the pipe, he had probable cause to believe that it was illegal contraband. Contrary to the dissent's claim that the probable cause standard was clearly met, the trial court never made such a finding. Rather, the trial court erroneously concluded that Officer Carr's belief that the item was used for smoking marijuana authorized his entry and seizure of the pipe. Clearly, the trial court's findings and conclusions run afoul of *Arizona v. Hicks.*

For the reasons discussed herein, we affirm the decision of the Court of Appeals. This matter is remanded to the McCracken Circuit Court for further proceedings consistent with this opinion.

LAMBERT, C.J., COOPER, ROACH, and SCOTT, JJ., concur.

GRAVES, J., dissents by separate opinion, with WINTERSHEIMER, J., joining that dissent.

Dissenting Opinion by Justice GRAVES.

Respectfully, I must dissent from the majority's opinion because I believe it is patently contrary to the standards set forth in both federal and Kentucky jurisprudence. The probable cause standard was clearly met to justify a "plain view"

seizure of the pipe in this case. Accordingly, I would reverse the Court of Appeals and affirm the trial court's ruling.

The majority concedes that once Officer Carr detected the smell of marijuana emanating from the pipe, he had probable cause to believe the pipe was drug paraphernalia. Yet, the majority refuses to consider this additional evidence since Officer Carr did not smell the marijuana until he entered the premises. According to the majority, whether or not Officer Carr was given consent to enter the premises was not "preserved for review."

I must disagree, as I find the majority's conclusion to be unsupported by the record. The trial court's written findings of fact state; "*The child allowed Officer Carr into the residence* and upon further examination Officer Carr detected the odor of marijuana emanating from the pipe." (Emphasis added). The trial court further concluded as a matter of law, "When Officer Carr observed the pipe *he was in a place he was legally entitled to be.* Therefore, the plain view exception to the prohibition against warrantless searches applies . . . ." (Emphasis added). It is unmistakable from these written statements that the trial court considered and ruled on the consent issue,[1] determining that Officer Carr was legally entitled to enter the house and further observe the pipe. Accordingly, the issue is properly preserved for our review. *See Commonwealth v. Maricle,* 15 S.W.3d 376, 380 (Ky.2000) (issues "raised and ruled on by the trial court" are proper for appellate court review).

1. The majority reasons that since "the trial court could [not] have possibly made an informed decision regarding the legal effect of the minor's actions without the benefit of the minor's testimony," then "it belies reason to assert that the trial court considered and ruled on the consent issue." *Ante,* at 129.

Whether or not the majority believes that the trial court's decision was "informed" or not, the fact remains that the consent issue was considered and ruled on by the trial court (as there are specific findings regarding it), and thus, we are obligated to consider it.

Since the trial court's determination of probable cause was premised upon the assumption that Officer Carr was in a place he was legally entitled to be when he detected the smell of marijuana emanating from the pipe, we must determine whether Officer Carr had valid consent to enter Appellant's home. Upon proper review, both federal and Kentucky jurisprudence support the trial court's determination that Officer Carr was given valid consent.

In *Nourse v. Commonwealth*, 177 S.W.3d 691 (Ky.2005), we held that "[t]he test for whether third-party consent is valid is whether a reasonable police officer faced with the prevailing facts reasonably believed that the consenting party had common authority over the premises to be searched." *Id.* 696. "Common authority rests on mutual use of the property by persons generally having joint access or control for most purposes ...." *United States v. Matlock*, 415 U.S. 164, 171 n. 7, 94 S.Ct. 988, 993 n. 7, 39 L.Ed.2d 242 (1974). In *Nourse, supra*, we stated that "in the absence of additional information to the contrary, it is generally considered reasonable for police officers to presume that persons answering knocks at the door of a residence have authority to consent to a search of that residence." *Id.* at 698 (citing *United States v. Jenkins*, 92 F.3d 430 (6th Cir.1996)).

Two Sixth Circuit cases are directly on point and indicate unequivocally that the adolescent in this case had the common authority to allow Officer Carr into the home. In *United States v. Clutter*, 914 F.2d 775 (6th Cir.1990), the court held that children of twelve and fourteen years could consent to a search of the bedroom used by their mother and her male companion. *Id.* at 778. The *Clutter* court reasoned that "there is every reason to suppose that mature family members possess the au-thority to admit police to look about the family residence, since in common experience family members have the run of the house." *Id.* at 777. In *Lenz v. Winburn*, 51 F.3d 1540, 1548 (11th Cir.1995), the court explained:

> Four reasons support our holding that minors may give third-party consent. First, privacy is an intuitive interest, and legal sophistication is not required even for adults to give valid consent. Hence, minors need not necessarily be presumed incapable of knowing consent. Second, the list of factual considerations bearing upon the voluntariness of the consent is open-ended. The youth of the consenter, with its attendant vulner-ability to coercion, is certainly among them. This individualized assessment obviates the need for a categorical rule to protect subjects of searches from sub-tle coercive tactics to secure a minor's consent. Third, consent searches serve a legitimate purpose that is properly balanced against the cost of limiting a minor's ability to consent. This balanc-ing counsels against a bright-line rule prohibiting minor consent. Finally, the rationale behind third-party consent in-volves no notion of agency. Rather, the third-party consent rule recognizes that sharing space with another lessens the expectation of privacy in that space. This compromise of the expectation of privacy is no less the case for a minor co-occupant than for an adult.

*Id.* at 1548–49 (citations omitted).

The adolescent in this case was Appellant's son who was estimated to be about twelve years old. Contrary to the majori-ty's assertions, the Commonwealth was not required to prove the adolescent's exact age or receive testimony from the adoles-cent in order to establish the reasonable-

ness of Officer Carr's actions.[2] It is axiomatic that police officers are entitled to make reasonable presumptions based on facts which are reasonably available to the officer at the moment of their actions. *See, e.g., Nourse, supra,* at 696; *Farmer v. Commonwealth,* 169 S.W.3d 50, 52 (Ky. App.2005); *see also, United States v. Jenkins,* 92 F.3d 430, 436 (6th Cir.1996)("consent is valid if 'the facts available to the officer at the moment ... warrant a man of reasonable caution in the belief that the consenting party had authority over the premises' ") (quoting *Illinois v. Rodriguez,* 497 U.S. 177, 188, 110 S.Ct. 2793, 2801, 111 L.Ed.2d 148 (1990)). Officer Carr had every reason to believe that this adolescent was of a mature age and had full run of the house. Thus, the minor was capable of giving third-party consent to enter the premises. *See also United States v. Gutierrez–Hermosillo,* 142 F.3d 1225, 1231 (10th Cir.1998).

The record also supports the trial court's conclusion that the adolescent's consent was voluntarily given in this case. After Officer Carr spotted the suspicious looking pipe, he asked the adolescent if he could come inside. In response, the minor stepped back out of the doorway and allowed the Officer to enter the premises.

"Whether consent was free and voluntary so as to waive the warrant requirement of the Fourth Amendment is a question of fact to be determined from the totality of all the circumstances." *United States v. Carter,* 378 F.3d 584, 587 (6th Cir.2004) (en banc); *see also Diehl v. Commonwealth,* 673 S.W.2d 711, 712 (Ky.1984). In *Carter, supra,* the Sixth Circuit held that consent was voluntarily given where the defendant stepped back and let plainly identified police officers into the residence upon their request. *Id.* at 588. The court reasoned that "[a]ny ordinary caller, under like circumstances, would understand assent to have been given, and the police are not held to a higher standard in this regard than an ordinary person." *Id.* As there is nothing in the record to indicate that this adolescent was somehow intimidated, coerced, or tricked, there is clearly substantial evidence in the record to support the trial court's conclusion that the adolescent voluntarily gave consent to Officer Carr to enter his home.

Once Officer Carr was legitimately inside the premises, he was able to get a closer look at the pipe in plain sight and detect the smell of marijuana emanating from it. The majority makes a point of noting that since Officer Carr actually picked up the pipe, instead of simply observing it, this case is akin to the facts in *Arizona v. Hicks,* 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987). In *Hicks,* it was not possible for the officers to easily observe the stereo's serial numbers without moving the stereo. *Id.* at 323, 107 S.Ct. at 1152. Moreover, the officers were required to report the serial numbers by telephone to the police station before they could determine whether there was probable cause to believe the equipment was stolen. *Id.* This case is easily distinguished, as manipulation of the pipe was not necessary to determine its criminal nature. Officer Carr could have detected any smells emanating from the pipe by simply bending down and did not have to engage in any outside investigation in or-

**2.** When the court in *Clutter, supra,* used the term "mature family members," it was presuming that in the absence of circumstances indicating otherwise, adolescents between the ages of twelve and fourteen are generally mature enough to possess common authority over a family residence. *See id.* at 777. At no point, did the court in *Clutter* analyze the maturity of the particular adolescents involved in that case, as such an analysis would not only be absurd, but impractical.

der to determine the pipe's criminal nature. Thus, the fact that Officer Carr picked up this pipe is of no consequence whatsoever other than to draw distinctions that have no purpose. The majority's holding in this case simply encourages officers to be more acute to arbitrary lines drawn by this court.

Once Officer Carr detected the smell of marijuana emanating from the pipe, he had probable cause to seize the pipe as it was in plain view and was likely to be destroyed or concealed if he did not immediately take steps to secure the evidence.[3] *Posey v. Commonwealth,* 185 S.W.3d 170, 173 (Ky.2006) ("Where officers have probable cause to believe that a crime has occurred and that evidence from that crime is in imminent danger of being destroyed, it is reasonable for law enforcement officers to secure the place where the evidence is located in order to prevent its imminent destruction.").

I would, accordingly, reverse the Court of Appeals and affirm the trial court's ruling.

WINTERSHEIMER, J., joins this dissenting opinion.

---

**3.** Once again, the majority's assertion that there must be evidence or testimony regarding whether the officer perceived that the occupant of the home was likely to remove or conceal the illegal contraband is incorrect. The pipe was in plain view and easily concealable. It was perfectly reasonable to presume that such a small item was in imminent danger of being concealed or removed had Officer Carr left the residence without securing the contraband. *See Posey v. Commonwealth,* 185 S.W.3d 170, 173 (Ky.2006) ("Moreover, since the contraband was in plain view, it was also reasonable for them to believe that the drugs were in imminent danger of being destroyed in the absence of immediate action to secure the evidence.").