RENDERED: AUGUST 14, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-000223-MR

JENNIFER S. SMITH                                          APPELLANT

APPEAL FROM MCCRACKEN CIRCUIT COURT
v.          HONORABLE WILLIAM A. KITCHEN, III, JUDGE
ACTION NO. 17-CR-00008

COMMONWEALTH OF KENTUCKY                                   APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, CALDWELL, AND K. THOMPSON, JUDGES.

ACREE, JUDGE: Jennifer Smith appeals the McCracken Circuit Court's January

17, 2019 judgment and sentence of imprisonment. She concedes that her

arguments are not preserved for appeal but requests this Court to review her

arguments for palpable error. She contends the trial court erred by (1) failing to

grant her a directed verdict and (2) convicting her of two counts of first-degree criminal mischief, violating double jeopardy. Finding no error, we affirm.

## BACKGROUND

On August 21, 2016, Nekita Tyler and Ronnie Bone met at Rocker's Bar and Grill in McCracken County. While there, Tyler and Bone had quite a bit to drink. That same day, Smith arrived at Rocker's for a birthday party and had three shots of vodka. Tyler and Bone eventually asked Smith for a ride across the street to get cigarettes and vodka; Smith agreed. After buying the cigarettes and alcohol, Smith drove all of them back to Rocker's, traveling westbound.

In another car, John Farris, his wife (Bridgette Farris), and their eight-month-old daughter (Stella Farris) were traveling southbound on U.S. Highway 45 to get back home. Smith's and Farris's cars collided in the median. Thankfully, no life-threatening injuries resulted from the crash. The McCracken County Sheriff's office was dispatched to the scene.

Upon arriving, police officers spoke to witnesses and occupants of both vehicles. Those injured were transported to the hospital. Initially, Sergeant David Shepard believed Bone was the driver, but after speaking to witnesses, and observing the scene, police concluded Smith was operating the vehicle. Smith was a woman of short stature and police noticed the seat was pulled up almost against the steering wheel – Bone could not have fit in the seat.

At the hospital, Smith admitted to police she had three shots of Fireball Vodka before driving to the shop. She also admitted she took Valium, Lortab, and "a nibble" of Suboxone (a prescribed medication) earlier in the day. Police confronted Smith with the surveillance video from the shop showing her driving when they left. Police asked if she would "do it again," and Smith stated she would not have driven and she was very sorry.

An hour and fifty-three minutes after the reported collision, hospital employees drew Smith's blood. Her blood-alcohol level was .012. Based on the time the blood was withdrawn, Dr. Greg Davis extrapolated her blood/alcohol level at the time of the collision was between .039 to .049. Dr. Davis also concluded the Valium and Lortab in her system were within therapeutic levels but would have diminished her driving ability. The damage from the crash resulted in Farris's vehicle being totaled, a loss of about $20,000.00, and 37 ½ feet of guardrail damaged, costing the state $1,410.62 to replace.

On September 11, 2018, Smith was tried before a jury. During the trial, Bone, Tyler, and a witness to the accident testified Smith was the driver. Despite that testimony, Smith testified Bone drove her car away from Rocker's, but that was all she could remember from the accident. At the conclusion of the evidence, the jury found her guilty of: (1) operating a motor vehicle while under the influence of intoxicants; (2) wanton endangerment in the first degree (Bridgette

Farris); (3) wanton endangerment in the first degree (John Farris); (4) wanton endangerment in the first degree (Stella Farris); (5) criminal mischief in the first degree (Farris's car); (6) criminal mischief in the first degree (guardrail); (7) failure to notify Transportation Cabinet of address change;[1] (8) assault in the second degree (Nekita Tyler); and (9) assault in the fourth degree (Bridgette Farris). The trial court sentenced her to concurrent terms of imprisonment totaling one year and fines totaling $800.00. This appeal followed.

## STANDARD OF REVIEW

Smith concedes that all of her arguments are unpreserved for appeal. However, this Court can review unpreserved issues for palpable error. "A palpable error which affects the substantial rights of a party may be considered . . . on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error." RCr[2] 10.26. "[U]nder that standard, reversal is warranted if a manifest injustice has resulted from the error, which requires a showing of the probability of a different result or error so fundamental as to threaten a defendant's

---

[1] The trial court eventually dismissed this charge in its Amended Final Judgment/Sentence of Imprisonment dated January 17, 2019.

[2] Kentucky Rules of Criminal Procedure.

entitlement to due process of law." *Jones v. Commonwealth*, 382 S.W.3d 22, 29 (Ky. 2011) (internal quotation marks and citation omitted).

## ANALYSIS

Smith first argues the trial court erred by failing to grant a directed verdict on the charge of criminal mischief pertaining to the guardrail because the Commonwealth did not prove she was the cause of the damage. The statutory elements of first-degree criminal mischief are that the person, (1) having no right to do so or any reasonable ground to believe that he has such right, (2) intentionally or wantonly (3) defaces, destroys or damages any property, (4) causing pecuniary loss of $1,000.00 or more. KRS[3] 512.020. All that is in dispute is whether Smith caused the damage to the guardrail. Because the issue is unpreserved, Smith is entitled to nothing more than review for palpable error. To succeed in her claim, she must show that a manifest injustice resulted from the court failing to issue a directed verdict. We find no palpable error.

Her counsel had ample opportunity to attack this question. It seems that her counsel chose to use the strategy that she was not the driver of the car, in lieu of showing the flaws in the Commonwealth's causation argument. Additionally, a reasonable juror could conclude that Smith caused the damage to the guardrail, because jurors may draw reasonable inferences from the evidence.

---

[3] Kentucky Revised Statutes.

-5-

*Barker v. Commonwealth*, 304 Ky. 13, 199 S.W.2d 713 (1947). Smith fails to argue, and we fail to see, how she suffered a manifest injustice.

Smith also argues the issue of double jeopardy regarding her two counts of first-degree criminal mischief. Again, we disagree.

KRS 505.020 addresses rules regarding the question of multiple offenses arising from a single course of conduct. The general rule is simple: "[w]hen a single course of conduct of a defendant may establish the commission of more than one (1) offense, he may be prosecuted for each such offense." KRS 505.020(1). As with many rules, there are exceptions.

The legislature carved out exceptions for "included" offenses, KRS 505.020(1)(a); for offenses requiring inconsistent findings of fact, KRS 505.020(1)(b); and for offenses designed to prohibit a continuing course of conduct where only an uninterrupted course of that conduct is alleged, KRS 505.020(1)(c).

The Kentucky Supreme Court held that the statute incorporates the *Blockburger*[4] test as one of the ways to determine whether one offense is included in another. *Commonwealth v. Burge*, 947 S.W.2d 805, 809 (Ky. 1996) (referencing KRS 505.020(2)(a)). The statute also deems offenses the "same" for double jeopardy purposes if one is an attempt to commit the other, KRS 505.020(2)(b); if one differs from the other only in requiring for its commission a

---

[4] *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932).

lesser kind of culpability, KRS 505.020(2)(c); or if one differs from the other only in requiring for its commission a less serious injury or risk of injury to the same person, property, or public interest, KRS 505.020(2)(d). *See McNeil v. Commonwealth*, 468 S.W.3d 858, 867 (Ky. 2015).

None of these exceptions applies when the same course of conduct victimizes two different individuals. In Smith's case, then, there is nothing to apply but the general rule: "a single course of conduct of a defendant may establish the commission of more than one (1) offense, [and] he may be prosecuted for each such offense." KRS 505.020(1). Circumstances such as those in Smith's case are not uncommon and routinely result in separate counts of assault for each victim of the collision. *See*, *e.g.*, *Farmer v. Commonwealth*, 169 S.W.3d 50, 52 (Ky. App. 2005) ("As a result of the motor vehicle collision, Farmer was indicted . . . on two counts of first-degree assault relative to the injuries sustained by Angela and Daniel Baker.").

We find no palpable error here.

## **CONCLUSION**

Based on the foregoing reasons, we affirm the McCracken Circuit Court's January 17, 2019 judgment and sentence of imprisonment.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Roy Alyette Durham, II
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Perry T. Ryan
Assistant Attorney General
Frankfort, Kentucky